IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MARYLAND

ALLIANZ INSURANCE COMPANY, AS
SUBROGEE OF BERTELSMANN, INC., et al.

    Plaintiffs

v.

WESTMINSTER WAREHOUSING
SERVICES, et al.

    Defendants

Case No: 02-CV-03178

FILED _____ ENTERED _____
LODGED _____

DEC - 8 2003

CLERK U.S. DISTRICT
DISTRICT OF MARYLAND

## RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the Defendant, Westminster Warehousing Services ("Westminster"), by and through counsel, Charles J. Goetz, III and the Law Offices of Nancy L. Harrison and in response to Plaintiffs' Motion for Summary Judgment states as follows:

1. Plaintiffs Allianz Insurance Company and Gerling America Insurance Company ("Plaintiffs") have filed a Motion for Summary Judgment seeking to have the issue of Westminster's liability for damages determined as a matter of law.

2. Plaintiffs are not entitled to judgment as a matter of law because there are material disputes of fact as more fully set forth in Westminster's Memorandum in Support which hereby is incorporated by reference herein.

**WHEREFORE**, Defendant Westminster Warehousing Services prays this Honorable Court deny the Motion for Summary Judgment filed by Plaintiffs Allianz Insurance Company and Gerling America Insurance Company.

Respectfully submitted,

**LAW OFFICE OF NANCY L. HARRISON**

_____
Charles J. Goetz, III
Fed. Bar No. 09825
170 Jennifer Road, Suite 210
Annapolis, Maryland  21401-3047
(410) 841-5421/(301) 970-2355

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing Response to Plaintiffs' Motion for Summary Judgment, Memorandum in Support, and proposed Order were mailed postage prepaid, on December 8, 2003 to: Lloyd Snow, Esquire, Cindy Diamond, Esquire, 1100 Mercantile Bank & Trust Building, 2 Hopkins Plaza, Baltimore, MD 21202, Attorneys for Plaintiffs; Alyssa Endelman, Esquire, Paul Hines, Esquire, 30800 Telegraph Road, Suite 3858, Bingham Farms, MI 48025, Attorneys for Plaintiffs; William Carlos Parler, Jr., Esquire, Parler & Wobber, LLP, 406 E. Joppa Road, The Hemenway Building, Towson, MD  21286, Attorney for Glamour Moving Co.

_____
Charles J. Goetz, III

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| ALLIANZ INSURANCE COMPANY,<br>AS SUBROGEE OF BERTELSMANN, INC., et al.<br><br>Plaintiffs<br><br>v.<br><br>WESTMINSTER WAREHOUSING<br>SERVICES, et al.<br><br>Defendants | Case No: 802-CV-03178 |

## ORDER

Defendant Westminster's Response to Plaintiffs' Motion for Summary Judgment having been read and considered, it is this _____ day of _____, 200_

**ORDERED** that the Plaintiffs' Motion for Summary Judgment as to liability hereby is and shall be DENIED with respect to Defendant Westminster Warehousing Services.

_____
Judge, United States District Court for the
Northern District of Maryland

Charles J. Goetz, III, Esquire
Law Office of Nancy L. Harrison
170 Jennifer Road, Suite 210
Annapolis, Maryland 21401-3047

Lloyd Snow, Esquire
Cindy Diamond, Esquire
1100 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21202
Attorneys for Plaintiffs

        Alyssa Endelman, Esquire
        Paul Hines, Esquire
        30800 Telegraph Road, Suite 3858
        Bingham Farms, MI 48025
        Attorneys for Plaintiffs

        William Carlos Parler, Jr., Esquire
        Parler & Wobber, LLP
        406 E. Joppa Road
        The Hemenway Building
        Towson, MD 21286
        Attorney for Glamour Moving Co.

Case 1:02-cv-03178-JFM   Document 32   Filed 12/09/2003   Page 4 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MARYLAND

ALLIANZ INSURANCE COMPANY, AS
SUBROGEE OF BERTELSMANN, INC., et al.

    Plaintiffs

v.

WESTMINSTER WAREHOUSING
SERVICES, et al.

    Defendants

Case No: 02-CV-03178

\_\_\_FILED  \_\_\_ENTERED
\_\_\_LODGED  \_\_\_RECEIVED

DEC - 8 2003

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Defendant, Westminster Warehousing Services ("Westminster"), by and through counsel, Charles J. Goetz, III, and the Law Offices of Nancy L. Harrison, and for its Memorandum of Law in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment states as follows:

I. STATEMENT OF DISPUTED MATERIAL FACTS

This action involves a fire that occurred on October 4, 1999, at a warehouse facility owned by Westminster on Manchester Road in Westminster, Maryland (the "Warehouse"). At the time of the fire, the Warehouse served as a storage facility for books owned by Bertelsmann, a division of Random House. After the fire, Bertelsmann submitted a claim to its insurers, Allianz Insurance Company ("Allianz") and Gerling America Insurance Company ("Gerling"), who are the plaintiffs in this matter (hereinafter jointly the "Plaintiffs"). The Plaintiffs claim to have made a payment to Bertelsmann as a result of this claim and thus

become subrogated to any rights Bertelsmann might have against those responsible for the alleged loss.

During this litigation, the Plaintiffs propounded Requests for Admission of Fact to Westminster which were not answered, and thus became admitted. Plaintiffs claim that such admissions establish Westminster's liability to them as a matter of law because they establish that Westminster has admitted goods were delivered to it and that it was hired to store such goods.

Westminster contends that the fire which allegedly damaged the bailed goods was caused by electrical activity that originated in an enclosed storage unit rented to a third party, John Kave (the "Kave Unit"). Kave allowed another individual employed by co-Defendant Glamour Moving, Inc. ("Glamour"), Scott Broadfoot, to attach unapproved wiring to an electrical outlet in the Kave Unit. Exhibit 1, Depo. of Broadfoot, p. __ (to be provided as soon as the transcript has been prepared). Broadfoot sought to run an extension cord to provide electric power for a light in an unlighted sea container (a sea container is a metal modular container approximately 20' x 8' x 8' used to transport cargo on container ships) (the "Container"). Id. at pp. __. Broadfoot was renting the Container from Westminster to use as a storage facility and occasional changing room. Id., at pp. __. This unauthorized and non-code wiring was determined to be the cause of the fire in an investigation by the Fire Marshall and Chesapeake Fire Consultants ("Chesapeake"). Exhibit 2, pp. 2 and 5. According to Chesapeake, the wiring was "hidden behind the corrugated metal building siding, and down the siding to the macadam driveway where a trench was dug in the macadam to accommodate the wiring entering the storage container". Exhibit 2, p. 4.

2

## II. STANDARD OF REVIEW

Summary judgment is governed by Fed. R. Civ. P. 56 which requires that the Plaintiffs establish there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A material fact is one whose resolution affects the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). Summary judgment should not be granted if the evidence is such that conflicting inferences may be drawn or if reasonable men might reach different conclusions based on the evidence. Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381. F.2d 245 (4th Cir. 1967). And summary procedure should be avoided where factual questions are important. Midway Enterprises, Inc. v. Petroleum Marketing Corp., 375 F.Supp. 1339 (D. Md. 1974).

## II. ARGUMENT

Plaintiffs contend that because Westminster has admitted to being the bailee of the books stored in the Warehouse by Bertelsmann, they are entitled to summary judgement. In fact, Westminster contends that the question of its negligence regarding the cause of the fire of October 4, 1999, is disputed by the parties, and thus the Plaintiffs are not entitled to summary judgment.

A bailee "is not an insurer" and "owes only such duty of care as persons of common prudence" in the bailee's business "usually exercise towards similar property belonging to themselves". Broadview Apts. Co. v. Baughman, 350 A.2d 707, 709 (Md. App. 1976). Pursuant to Maryland statutory law, a bailee "is not liable for damages which could not have

3

been avoided by the exercise of such care". Ann. Code Md., CL sec. 7-204(1).

In the instant matter, Plaintiffs have shown a failure to return the goods bailed in good condition and thus are entitled to a presumption of negligence by Westminster, the bailee. Commodities Reserve Corp. v. Belt's Wharf, 529 A.2d 822, 824 (Md. 1987). To rebut this presumption, the bailee may "undertake to prove a specific cause as to which there was no negligence on the bailee's part." Id. Here, Westminster contends, and has put forth evidence supporting that contention, that the cause of the fire was negligence by one or more third parties outside of its control. Specifically, Broadfoot and Gill running an unauthorized, unapproved and non-code electrical wiring from the Kave Unit to the Container. Moreover, this unauthorized wiring originated from inside the Kave Unit, and on the outside of the Kave Unit was hidden from general view, and thus unable to be discovered by Westminster using ordinary care. Accordingly, Westminster has met its burden of producing evidence to rebut the presumption.

Once a defendant bailee has met its burden of rebutting the presumption of negligence, "the burden of proving negligence never shifts from the plaintiff." Id. at 827 (emphasis supplied). Here, Plaintiffs have not presented any affirmative evidence of negligence. But even if they had, in Maryland the question of the negligence of the bailee is for the jury. Fox Chevrolet Sales v. Middleton, 99 A.2d 731, 733 (Md. 1953). Accordingly, there is a disputed material fact and the Plaintiffs' Motion for Summary Judgment should be denied.

4

## IV. CONCLUSION

As set forth above, there is a disputed material fact with regard to the negligence of Westminster as bailee of the Plaintiffs' goods. Accordingly, under the facts and circumstances of this matter Plaintiffs are not entitled to summary judgment on the issue of liability for the alleged damage to their insured's goods.

Respectfully submitted,

**LAW OFFICE OF NANCY L. HARRISON**

_____
Charles J. Goetz, III
Fed. Bar No. 09825
170 Jennifer Road, Suite 210
Annapolis, Maryland  21401-3047
(410) 841-5421/(301) 970-2355

# **EXHIBIT 1**

(Excerpts from the Deposition of Scott Broadfoot, December 3, 2003)

To be provided as soon as the transcript is prepared by the court reporter.

# Chesapeake Fire Consultants, Inc.

MAIN OFFICE:
508 ST. PAUL PLACE
BALTIMORE, MARYLAND 21202
TELEPHONE (410) 752-0904
FAX (410) 752-6732

EASTERN SHORE OFFICE:
P.O. BOX 648
BERLIN, MARYLAND 21811
TELEPHONE (410) 208-2683

October 20, 1999

Bud Leizure
Leizure Associates, Inc.
508 St. Paul Place
Baltimore, Maryland 21202

      Re:    **Fire Origin & Cause Investigation**
                 **Westminster Warehouse Fire**
                 **Railroad Avenue**
                 **Westminster, Maryland**
                 **Date of Loss** : 10/6/99
                 **Carrier**        : Kemper Insurance
                 **Our File No.** : 1099122

Dear Mr. Leizure:

Pursuant to your instructions I initiated an investigation of the above captioned fire loss on October 6, 1999, and examined the fire scene on October 7, October 13, and October 14, 1999. This report is submitted to apprise you of the results and status of my investigation to date.

## I.    INVESTIGATION

### Fire Event

The loss structure is a 150' by 85' warehouse building consisting of wood framing with corrugated metal exterior siding and an A-peaked, built-up roof. The building, situated on the east end of the business property, is part of the Westminster Warehouse operation that consists of rental storage units, outside rental storage containers, and warehousing facilities. The building is protected by a sprinkler system with heads mounted at intervals along the underside of the roof pitch throughout the building. The fire originated inside the storage unit at the extreme northeast corner of the building that was rented by John Kave for storage of items. The majority of warehouse space in the building contained skids of books stored by Random House Publishers.

The fire was reported to the Westminster Fire Department on Wednesday October 6, 1999 at 12:13 a.m. when smoke was seen coming from inside the building. Responding fire personnel found smoke throughout the building, the sprinkler system activating, and

1

File No.: 1099122
Westminster Warehouse Fire
Westminster, Maryland

fire seated within the storage unit rented by John Kave. Fire fighters report that the sprinkler system contained the main body of fire within the Kave unit, but heat extended from the unit and into the adjoining areas of the building causing the sprinkler heads to activate and control the fire spread. Two (2) sprinkler heads mounted to the walls inside the Kave storage unit also activated and further suppressed the fire.

Maryland Deputy State Fire Marshal McGhee responded and conducted an investigation while fire units still controlled the scene and prior to the removal of significant pieces of evidence. Inside the Kave unit FM McGhee determined the fire originated at the north interior wall where he found evidence of electrical activity on sections of unapproved wiring that extended from its attachment to the receptacle in the north wall. He describes the wiring as being of light gauge with red and white insulation. The wiring, from the connection on the side of the receptacle box, extended behind the paneled wall and then into the east outside wall from view. FM McGhee could not determine what appliance or electrical circuit it extended to. The evidence of electrical activity was found at the point about 4 feet above the receptacle box where two sections of the unapproved wiring were twisted together without wire nuts or taping, and where charring originated on the paneling and wall stud. Fire patterns on the items stored in the room were consistent with the point of the fire origin and an electrical cause. FM McGhee did not retain possession of the wiring. He officially classified the fire accidental and closed his investigation.

**Fire Scene Examination**

When I first examined the fire scene on October 7, 1999, Fire Marshal McGhee met me at the scene and described his observations, findings and opinions as previously mentioned in this report. All of the contents from within the Kave unit had been removed and placed outside the unit within a large dumpster and on the ground surrounding the dumpster. In particular FM McGhee pointed out a wooden shelving unit that was charred on the top shelf. This unit had been located at the east wall where deep charring was noted on the paneling and wall studs. FM McGhee stated that an aerosol can of some type of combustible or flammable material was sitting on the top shelf and exploded as fire spread to it, thereby causing the fire patterns near the top of the east wall.

Also at the fire scene on October 7 was a technician from Grinnel Fire Protection Services who was replacing sprinkler heads throughout the building in order to reactivate the sprinkler system. The technician reported that approximately 26 heads out of 46 activated during the fire event.

(For purposes of this report, the storage unit where the fire originated will be referred to as the "John Kave" unit.)

2

File No.: 1099122
Westminster Warehouse Fire
Westminster, Maryland

The "John Kave" unit consisted of two adjoining rooms, one measuring 9"4" by 9"4" and the other measuring 12' by 9'4". The fire originated within the 9'4" by 9' by 4" room, at the north wall adjacent to the entry door. The room of origin consisted of a slab and tile floor, wood paneled walls, and a drop ceiling. A sprinkler head was mounted in the back, south wall. Char patterns indicated the fire originated at the north wall, about 4' above a wall receptacle and behind the paneling. During development the majority of heat and flame spread up the wall and above the drop ceiling, and then extended into the open roof space above where the sprinkler heads were mounted to the roof trusses. Also during development, heat and flame spread through the paneling and to the interior of the unit, igniting portions of the contents and activating the sprinkler head. The activated sprinkler heads sprayed water down onto the unit and contents, and suppressed fire development.

I examined, photographed, and removed the wall receptacle mounted in the north wall below the point of the fire origin. Upon inspection I found the ends of unapproved wiring attached to the side of the outlet, and also found what I believe to be the grounding wire for the receptacle to be detached. (Refer to the enclosed photographs.) I recovered the outlet as evidence. These findings confirmed Fire Marshal's McGhee's observations of the unapproved wiring leading from the outlet.

I examined the approved building wiring leading to the outlet and through the space behind the wall, and found no evidence of electrical activity or failure. I also examined the wiring leading to a disconnected florescent ceiling light and found no evidence of electrical failure or activity.

On October 7 I examined the interior and exterior of the John Kave unit, but did not find the unapproved wiring described by FM McGhee. I also examined the contents of the dumpster, but the amount and depth of the debris precluded my finding the wiring.

I contacted Roll-Off Express, the owner of the dumpster, and arranged to examine the contents at their facility in Finksburg, Maryland. On October 11, at the Roll-Off Express facility I examined all of the contents of the dumpster but could not locate the suspect unapproved wiring. The only item I recovered as evidence was a portion of an orange extension cord that was cut on one end and charred on the other.

On October 14, 1999 I revisited the fire scene and found unapproved wiring extending from within the John Kave unit, along the outside of the east wall, and into a metal storage container rented by Scott Broadfoot, an employee of Glamour Moving Company. (Glamour Moving Company parks their trucks on the east end of the warehouse grounds near the area where the fire originated.) The end of the braided wiring extended into the Kave unit at the top of the east wall, and the end appeared to have been twisted into another section of wiring that would have continued into the Kave unit, probably to the

3

File No.: 1099122
Westminster Warehouse Fire
Westminster, Maryland

outlet at the north wall. The other end of the wiring extended into the metal storage container through a hole drilled in the metal side near the bottom. The section of wiring nearest the container was hidden behind the corrugated metal building siding, and down the siding to the macadam driveway where a trench was dug in the macadam to accommodate the wiring entering the storage container. I recovered all of the wiring as evidence after photographing it in place.

On October 13, 1999 I conferred with Fire Marshal McGhee. FM McGhee reported that he received a phone call from a Charles Kuhn who provided information relative to the unapproved wiring in the Kave rental unit. On October 20, 1999 I interviewed Mr. Kuhn by telephone. Mr. Kuhn is a prior employee of Glamour Moving Company and had knowledge of the unapproved wiring. In late July or early August 1999, Scott Broadfoot and Jack Dill, the owner of Glamour Moving Company, ran the wiring from the outlet in the Kave unit and into the storage container rented by Scott Broadfoot. Scott Broadfoot told Kuhn that he and Jack Dill ran the wiring so he could have electric inside his container. Mr. Kuhn's description of the wiring and its path from the outlet to the storage container exactly matched what I found and recovered.

**Collateral Considerations**

I have been unsuccessful in locating and interviewing either John Kave or Scott Broadfoot. It is my understanding that John Kave currently works for Easy Movers located in the 100 block of Wabash Avenue in Glyndon, Maryland; his home address and telephone number are unknown. Easy Movers confirmed that he does work there. Scott Broadfoot is currently residing at the Carroll County Jail in Westminster, and is on work release which allows him to work for Glamour Moving Company during the day.

All of the physical evidence I recovered has been placed in our evidence storage facility for possible later consideration. The evidence will be available should you decide to engage the services of an electrical engineer.

All factors considered, the fire was caused by an electrical failure/malfunction of the unapproved wiring that was installed by Scott Broadfoot and Jack Dill from the wall outlet inside the John Kave unit to the storage container rented by Scott Broadfoot. Apparently, the wiring was installed to provide electrical service to the Broadfoot container.

Warehouse Manager Ed Garver was unaware that the electrical wiring had been installed to the Broadfoot container.

4

File No.: 1099122
Westminster Warehouse Fire
Westminster, Maryland

## II. OPINIONS/CONCLUSIONS

The following opinions are rendered to a reasonable degree of fire investigation certainty and probability, based on my professional education, training and experience, and the facts and evidence as described in the receding pages of this report.

1. The fire originated in the John Kave storage unit, at the north wall where an electrical short occurred on a section or sections of unapproved electrical wiring that extended from the wall outlet in the unit to the storage container rented by Scott Broadfoot.
2. The fire was caused by an electrical wiring failure.

Respectfully submitted,

Chesapeake Fire Consultants, Inc.

By: William J. Cysyk, CFEI